The next case on our matter, the next matter on our calendar is Marentette v. Abbott Laboratories. Thank you. Ah, now it's all clear. It clarifies so much. Thank you. Eve Goland. Good morning, Your Honors. Eve Goland, Counsel for Appellants, Marentette, Niswader, and Steinlein. I'd like to reserve three minutes for rebuttal. So, organic infant formula. We alleged in our complaint that federal law and the USDA currently prohibit 26 of Abbott's ingredients from organic infant formulas. And yet they're a certified producer. They are still labeling the product as organic. I want to come back again to the word certified in just a moment. And we allege that because federal law prohibit the organic label on these products, that it is therefore false advertising under state law. The district court granted Abbott's motion to dismiss on preemption grounds. And again, on a motion to dismiss, the district court essentially reached a question of fact and decided it on the merits. It accepted Abbott's factual claim that the product was certified as an organic product. Whereas we claimed that only the organic plant was certified, yet the dairy cows and the agricultural bits, not the ingredients. Nonetheless, district court determined that the whole product was certified. It then decided that certification alone was sufficient under federal law to label it as organic. And then concluded that the product was preemptive. It isn't just that it was certified. It's that your particular attack on the use of the certification label would render the certification process useless effectively. No, it wouldn't. The certification process looks only at the organic plant, the agricultural plant. It doesn't look at the ingredients. And the organic process, the certification process is extremely useful in looking at the fertilizer. Wait, wait. The National Organic Program Handbook says that the certifying agent, quote, must review all multi-ingredient products before they are sold, labeled, or represented as organic to ensure that the product composition meets the requirements for the proposed labeling category. So they are looking at the ingredients, right? No, they're not. And if I can point, Your Honor, to our reply brief at pages 13 to 14, that is where we show by the language in the rest of the handbook, shows that certifiers are not required to look at the ingredients at all. There's some language there that says that the certifier should look at the ingredients. And also we had evidence that here the certifier told its clients, including Abbott, that these ingredients are not permitted. We also have evidence that the certifier didn't even know all of the ingredients that were going into the product. And yet they were certified. This organic plant was certified, yes, but not the product. When certification is provided, is, under federal law, is the manufacturer allowed to put that label on the product? No, they are not. And this gets to the second reversible error by the district court. Under federal law, 7 U.S.C. 6504, to be labeled as organic, a product must comply with here relevant two requirements. First, it cannot include banned synthetic ingredients. And second, it must comply with a certified organic plant. But first of all, one also says except as otherwise provided. And I gather there is some issue about infant formula and vitamins and so forth. Now, putting aside whether who's right about that, isn't the next step. That's the compliance. But then there's a certification process, right? The certification looks at the organic plant. The certifier agrees to the organic plant where they say that, for instance, the cows will be in this barn at 8 a.m. to 5 p.m. and they can roam after. The certification does not certify compliance with that plant. And that is why the statute. Wait, wait, wait. In terms of compliance with the plan, the plan doesn't have to say, and we don't put in any strict nine. I don't know what the certificate said. I don't know what the certification said. I don't know. That's the problem here, because this was a fact question. Isn't it a public document, the certification? No, it's not. It's not? Maybe a little under the Freedom of Information Act? No. No. Also, the information that the certifier was looking at, that's also not a public document. So your argument is they certified it even though it had synthetic chemicals or you don't know whether they did or not? Both, really. I don't know if they certified the whole product, as Abbott claims that they did, or if they only certified the plan, which is the only thing that they can certify under federal law. Well, wait, don't you need to know something like that in order to allege that they haven't properly complied? We know what ingredients are in the product based on the ingredient list. Right on the label. Right. And we also know that the certifier told Abbott that these ingredients are banned from products. They're banned from organic products. And they're still listed on the label? And they're still listed on the label. And the organic plan is still certified. Not the whole product. There's a federal regulation that we cite in the papers, 65 Fed Reg 80548, page 805-87. Sorry, it's the Fed Register, where it states very specifically, certification is as to the process, not the product. Right, but my point was if you're certifying the process and you're doing what I see the regulations as requiring, which is really inspecting it every step of the way, it's almost better than certifying the product. You're looking at everything that goes into the product. The certification looks only at the barn. It looks only at the farm. It is not looking at the ingredients themselves. And also, going back to the statute again, the synthetic ingredient part and the certification part are two separate sections. What the district court did in interpreting the statute, despite the requirement that it interpret the statute in a way that would avoid preemption, the district court crossed out the first one altogether. No, I don't think it did that. So let's move on to something more serious. Do you think it would be useful for us to get the views of the Department of Agriculture about what the certification process is supposed to do? I think that it would be useful first for us to get some facts as to what was certified. Do you think it would be useful for us in deciding this appeal to solicit the views of the Department of Agriculture with respect to the merits of the decision of the district court? My apologies, sir. No, I don't, because the USDA has already stated that these ingredients are not permitted in organic products. Well, that's not the question, is it? The question is how does the certification program work? Are the certifiers supposed to examine the ingredients and determine whether inputs into processed foods comply with the requirements of the regulations and so forth? It would be interesting to know, would it not, whether the Department of Agriculture agrees with you that the certification process is just supposed to look at the barn? I see your point, and I think that would be useful. I think what would be even more useful is to see what the certifier here did. Did the certifier here certify the ingredients? Well, what if the certifier did the wrong thing? What if the certifier is supposed to look at the ingredients, review them, decide whether the things that are being put into the product at the plant are proper or not, and this one didn't? Then I believe that, Your Honor, that a court should be able to review that decision. Would it be a falsehood for the company to say we were certified? Would it be false advertising to put out a label that says we were certified organic by the USDA? Well, their claim is that they are organic, not that they were certified. But didn't you concede certification? No, we did not. We did not. Our reply brief also cites parts in the record where we did not concede certification. Again and again, we told the judge that the ingredients were not certified, and we have evidence that the certifier told its clients these ingredients are prohibited. And still certified it, though. It certified the organic plant. It certified the farm. The way I'm reading your evidence about what the certifier said was that, gee, we made a mistake and we shouldn't have done it. Not that we didn't do it. I mean, they, in fact, did certify it. So the question gets back to what do you do if it's the certifier, the state of California is one certifier, that goes wrong? That gives you a private remedy? It does not give consumers a remedy against the certifier at all. Now, Abbott can implead the certifier and say that we relied on your certification. You messed up. You should be liable for this claim. Rule 14 gives them that procedure. And also, just a reminder, this is a motion to dismiss. This wasn't on summary judgment. This wasn't a bench trial. And we're asking questions of facts. It's about preemption, which is a question of law. Yes, but the judge's decision was based on, first, it's factual finding that the whole product was certified, and, second, it's erroneous interpretation of the law. Well, it's the latter that matters, right? I mean, the question of whether the product is certified, isn't the question really is the product supposed to be certified as a matter of law? I think it's two questions because the product was not certified. The plan was certified. How do you know that? Because federal law allows. Exactly. So it's a question of law. It's not a question of fact for discovery. It's a question of law as to whether the legal requirement for certification includes whether the inputs to the product are prohibited or not. I see your point. What I mean that is a fact is we have no reason to believe that QAI certified the ingredients. We have no basis for much to believe this. Abbott made that claim. The law required them to do. The law requires them to certify the organic plan. That requires them to do certain things, to certify the plan as warranting the label. Certifying the plan does not include ingredients. The federal regulations distinguish agricultural inputs, that's fertilizer, things like that, and ingredients. I just go back to this thing I initially quoted to you, which is at 7 CFR section 205.302C. I don't want to repeat it, but it says must review all multi-ingredient products. I'm about to repeat it, so I'll stop, but it looks like they're reviewing it. Maybe they didn't here. Maybe they made a mistake, but I'm not sure that means there's no preemption. Well, again, they did not know all of the ingredients in Abbott's products. We have evidence that some of the ingredients were described to the certifier generically, like A vitamin premix or nucleotides. Maybe the certifier should have asked more probing questions. Maybe the certifier did, but exactly what was certified, that's the question of fact. That's a question of law. The question of law is what is the inspector supposed to certify? If the inspector fouls up, there's all kinds of ways that the inspector could foul up. But if the inspector certifies, if the inspector is supposed to certify the ingredients and certifies the ingredients, notwithstanding a mistake, I'm having trouble saying why Abbott is at fault if it submits its products to the certification process and the certification process is supposed to cover these matters. For example, adosinine 5-monophosphate, that ingredient was not told to QAI, the certifier here. So we have to go back behind the certification and, okay, if Abbott certified some ingredients, which ingredients did it certify? That's the question of fact. And we don't know that? We do not know that. From a document that's made public? It is not in a document that's been made public. It's nowhere in our allegations. It is Abbott's factual claim. It's a defense, and I look forward to reaching that argument on summary judgment. But on a motion to dismiss, it's just too early to allow Abbott to make factual claims and not allow plaintiffs to present evidence. They are in control of the evidence that you seek, correct? Abbott is? They have the evidence that we seek, yes. All right. Thank you. We'll hear from Abbott. Mr. Abbott, you've retained three minutes for rebuttal. Good morning, and may it please the Court. I'm Scott Glauberman from Winston & Strawn here today on behalf of Abbott Laboratories. The district court dismissed this case on the basis of conflict preemption. Isn't that correct? That's correct. But isn't that wrong? That's incorrect. It was correctly decided that it should be a matter of conflict preemption here. But can't the federal government and the state government do what they want to do simultaneously? No, they may not. Is there anything in the state law on advertising that inhibits the federal government from doing its job of inspection and certification? What the state law does is, by its operation, by the way that the plaintiffs are using it here, is to try to overturn a federal certification that was granted to Abbott by USDA through an authorized certifier. The plaintiffs' claims in this case depend on a finding that the product should not have been certified, that the USDA symbol, which appears on the product's label, should not have been there. I want to seize on what you said because I do think that's the key to the case, and I started out asking the plaintiff's attorney that. Is it the case that a verdict in favor of the plaintiffs here necessarily moots the certification given by the USDA? It is absolutely the case, and I would like to explain, if I may, the provisions of the Act and the regulations that show that to be true. This is an argument that Judge Chen, in her opinion, addressed. She said plaintiffs' contention that the certifiers do not look at what is going into the product, do not look at the ingredients, but instead only look at an organic plan is nonsense. She said it would be illogical to think that Congress intended for the word organic to have no meaning besides that the product might be organic or it might not be. These are the provisions of the Act that address this specific subject. The first is 7 U.S.C. section 6510, paragraph A. That's a section of the Organic Foods Production Act. What that says is for a handling operation to be certified under this chapter, so this is a provision about certification, no person on the handling operation may, and then in paragraph 1 it says, add any synthetic ingredient not appearing on the national list. Does the certification mean that hasn't happened? The certification is a finding that that has been complied with. We know that from one of the regulations. That is 7 CFR section 205.2. That regulation by USDA states that certification means a determination, I'm now quoting, a determination made by a certifying agent that a production or handling operation is in compliance with the Act and is in compliance with all of the regulations under the Act. Let me ask a question. I've been puzzling over these various regulations. It says a determination that a production or handling operation is in compliance. It doesn't talk about products, right? I mean, their complaint is that the formula for the formula includes ingredients that shouldn't be there. Now, you're talking about a production or handling operation. You are a production or handling operation? A handling operation. Handling operation. A production operation is something like a farm that grows organic crops. Handling operation is something like Abbott, which assembles organic and other allowed ingredients. Okay. A food processor, Your Honor. And yet plaintiffs, whose complaint we believe to be true at this stage of the proceeding, claim that there are synthetic chemicals in your product. All of the ingredients in the product that are not organically grown are approved for use in organic products by USDA on what we call the national list, what the Act calls the national list. There are no chemicals that are not on this national list. That's correct. There is an entry on the national list called nutrient vitamins and minerals in accordance with section 104.20 of nutritional quality guidelines for foods. That's the reading of that entry. That's an issue that the district court did not reach. The district court did not need to reach it because the district court recognized . . . Right, because the district went off on preemption saying that in effect, even if for some reason those items are not on the list, the fact that the certifier approved it, right or wrong, is determinative, right? Because what they are doing is trying to go behind the certification. So for purposes of this argument . . . I mean, you may have another argument that even if the preemption is wrong, they still lose. But for purposes of this argument, don't we have to assume that it is correct that these ingredients are, for whatever reason, not on the list and not approved? I suppose it's technically correct that for this argument it wouldn't matter one way or the other. Yes. And the district court did not reach the issue of whether these ingredients are approved or not. However, USDA has stated clearly its view that these ingredients are all allowed in organic . . . But that's still a separate story. It is a separate story. We're talking about the preemption story for the moment because that's what the district court went off on. And for that, you agree that it does not matter whether the ingredients are approved or not, even if they are not approved on the national list, you would still win on the preemption ground that the district court went off on. If they're in conflict, if the statutes are in conflict. That's correct, Your Honor. Right. And your argument that the statutes are in conflict is that the certification . . . What the label means is that we are certified as organic. And they are certified as organic. And the certification means that incompetently, competently, rightly, wrongly, corruptly, not corruptly, the certifier determined that this product and this process was in compliance. That is correct. That is half of how we demonstrate that there is a conflict here between the state law causes of action being asserted and the federal statute. The other half comes back to the Organic Foods Production Act itself. In Section 6501 of the Act, the first section after the definitions, Congress stated its purposes in enacting this particular statute. Those are to have national standards for organic products, a consistent standard for consumers in organic foods, and to facilitate interstate commerce in organic products. And what is there about the New York Statute of False Labeling that inhibits any of those purposes? Because what it would allow if plaintiffs may proceed with a claim like this, and if plaintiffs in other cases may proceed with claims like this, is for different juries in different states applying different state laws to come to different decisions about what ingredients may be used in organic infant formula. And the Act says that the secretary is the one who determines that. And the mechanism that Congress put in place to make sure that there was uniformity on a national basis is his authorized agents are the ones who certify the operations and enforce the Act. The mechanism is what's critical, right, not the ingredients themselves. Because here, again, we're not talking about, we aren't reaching the defense that all the ingredients are approved ingredients. We're assuming that maybe they aren't. And the question is, you're saying that institutionally, the goal of a national label that means something under this Act is a statement about certification. And that's inconsistent with allowing individual juries to go behind the certification and say, oh, this certification shouldn't be on there substantively, even though the certification happened. That's entirely correct. And so I think what Judge Kogan and I were asking your adversary about was trying to get at what is it that the certification actually means. Do I take it that your best statutory language anyway is what you cited earlier, 6510A, if a handling operation, which is what you are, is going to be certified, the certifier has to establish that no person has added any synthetic ingredients. Is there anything else? Because she's saying all the certifier has to talk about is a plan. And she says that's only about Barnes. I don't know what the Barnes have to do with you. You don't have any Barnes, do you? We have no Barnes, Your Honor. So is there any? Is that the key? Do you have other language we should look at as well? Give me your best five. I will give you the greatest hits, Your Honor. The first is 6510 paragraph A, which I've discussed. Another is 6503 paragraph A, which is the statutory section that directs the Secretary of Agriculture to establish an organic certification program. And what the statute says in paragraph A is that the organic certification program is for producers and handlers of agricultural products that have been produced using organic methods. It does not say that have a plan to be produced using organic methods. So that is one. I've already talked about 7 CFR section 205.2. Could you talk about counsel's argument that 6504 prohibits the use of synthetic chemicals and the district court ignored that part of the statute? Well, the district court certainly did not ignore that part of the statute, Your Honor. The district court's opinion addresses 6504. It addresses the argument that plaintiffs made that all a certifier does is certify an organic plan. And it said, I think it's a quote, it said that's nonsense or it makes little sense because that would mean, if that's correct, that the word organic does not have any meaning. When you buy an organic product, according to plaintiffs, all you know is that its producer had an organic plan. You don't have any idea if they put non-organic ingredients in there or not. And that is absolutely not. What would be the point of a statute that does that? That's exactly right, and that's the question the district court asked. It might be that lobbyists for food producers managed to get through Congress something that has no teeth and no content. Pure industry benefit. That would not be unknown to have happened in the world. All I can say about that, Your Honor, is there's no sign it happened here. Of course. Judge Chen, though, is saying this would make little sense. That's a little different than saying, as you've been saying today, that there is specific language in the statute and in the regulations that refute any claim that all that's supposed to happen is looking at a plan. And that's what I'm looking for. I agree it would be a sort of toothless and strange statutory process, but that's different than saying that's what the process actually is that Congress created. I think in her opinion she was referring to all of the statute as a whole. She did not single out. Let me single out one final provision that I think is important. That is 7 CFR Section 205.404, Paragraph A. That is the regulation that tells a certifying agent when to grant certification. And the language here is extremely important. It says that certification is to be granted, quote, if the certifying agent determines that the organic system plan and all procedures and activities of the applicant's operation are in compliance with the regulation. The certifying agent is directed specifically to make sure not only is there an organic plan, which, of course, there must be, but also that all of the Act's requirements are complied with. The Act has that same requirement in it. What about the Act's rule that there should be no synthetic chemicals? Was that complied with in this case? That was absolutely complied with, Your Honor. Although plaintiffs allege, and at this stage of the proceedings, we have to believe them, said that there are synthetic chemicals in the product as produced. There are synthetic chemicals, Your Honor, in the product as produced. They're listed on its label, its ingredient label. All of them are allowed by USDA today to be used in organic products. But you're quoting the statute to us. This statute... Without the use of synthetic chemicals. Except as otherwise provided in this chapter. That's right. And otherwise provided in this chapter is the National List, which establishes synthetic chemicals that can be used. That is how the statute works. It has a general prohibition on the use of most synthetic chemicals, and it directs the Secretary to establish what they call the National List. And the National List has a list of allowable synthetic chemicals. And the ingredients in this case are all covered by an entry on the National List. As USDA itself has recognized, for example, in its proposed rule in 2012, which we talk about at great length in our brief, USDA said it recognized that today organic infant formula producers and other producers of organic foods are using these ingredients in their products under this specific entry on the National List. So these are, yes, synthetic, but allowed. And the product was certified. This may be a winning argument for you, ultimately, the National List, but it's not conflict preemption for New York State's mislabeling law to allow it to proceed to discovery. It is, Your Honor, and this is why. They're just doing more enforcement than the USDA, which looks like a paper tiger here. So they want to give some teeth, as Judge Lynch suggested it doesn't have, to the USDA's rules. No, Your Honor, that's not correct. What plaintiffs are seeking to do here is they are seeking to overturn the federal finding, the federal certification, that Abbott is in complete compliance with the Act and its regulations and all parts of the Act and its regulations, one of which, of course, is the provision on which synthetic ingredients may be used. You might win on that issue if this goes back to the district court, but I do not believe this is conflict preemption. That's the only issue on which the district court opined. That is the only issue the district court opined on, but here is how it is conflict preemption. Two reasons. First, in order to prevail, the plaintiffs in this case must necessarily overturn the federal certification. They must use state law to have a finding that the federal agency is wrong about federal law. That obstructs federal law because the Organic Foods Production Act gave to the agency the sole power to make that determination. That's first. That's the first way it conflicts with federal law. The second way it conflicts with federal law is that it allows different courts around the country. There are right now cases pending in the District of Columbia, in New York, in two different districts, in Los Angeles County Superior Court and elsewhere that make exactly these same arguments. These cases have been filed around the country, and they each seek to enforce, through a jury verdict, some different interpretation of what the national list means and what ingredients are allowed. And so... There might be some evidence, if they win jury verdicts around the country, that Abbott is not complying with this statute. No, Your Honor, that's not correct. What it will mean is that the jury has disagreed with USDA and the findings of its USDA-authorized certifier. It's really the institutional argument, isn't it? That is, it's not about whether... Your argument about conflict is not about what ingredients can go in and can't go in. That's on the list. It's whatever it says under the regulations. Your argument is about certification, which is the mechanism. What Congress said was we want a national system of labeling, and we want it all to be consistent. And the way we're going to enforce that is to have certifiers come in and say, at least according to you, whether all of these requirements, including sub 1, are satisfied. And that's how it's going to be done, not through individual lawsuits. That's what's in conflict. It's not about the... Everybody agrees, it seems to me, on 6504 parens 1. Everybody agrees that the state law does, you do, the plaintiffs do, that an organic product can't have synthetic materials that are not on the national list. Entirely correct. There's no inconsistency in anybody's view of the substance. The question is, does the certification certify that there is full compliance? And if so, is that conclusive? Not with respect to some other kind of claim, perhaps, but at least with respect to a claim that it's misleading to put USDA organic on the product. I think that's entirely right, Your Honor. The point that I was making about the inconsistency of verdicts is that juries, if these cases are allowed to proceed, would be allowed to use state law to have their own finding about whether a product is organic or not, and a single product could be found... But they'd ultimately be applying federal law. They may get it wrong. Maybe they're applying federal law if they're instructed under the California General Business Act, if you find there was a general fraud on the public, that's all you need to find under this statute to find that this was a deceptive activity. And that wouldn't require a finding that something was wrong under this particular act. It might make the USDA think about their regulatory scheme. I beg your pardon, Your Honor? It might make the USDA think about their regulatory scheme if they kept losing jury verdicts. Well, the USDA has not been sued here. I understand, but they promulgated all these rules and regulations. That's right. No executive agencies don't think. Well, and the USDA does have all of these regulations under the Organic Foods Production Act, one of which says that if you want to challenge something that a certifier has done, there's a procedure under the Organic Foods Production Act to do that. And the procedure is to appeal the certifier's decision, say here QAI's decision that Abbott qualifies as an organic handler. The act says if you want to challenge that, you must go to the secretary of USDA and present your challenge to him. He has the final word. And in that way, issues get resolved on a national basis. Could you then sue in district court if you disagree with the secretary's decision? Yes, you may. You may sue if you disagree with the secretary's decision, but then it is a suit against the secretary, and it is a suit to try to overturn agency action, which proceeds under a highly deferential standard. That's correct. That's correct, Your Honor. And just again, the terminology always bothers me. Maybe it shouldn't. When you say that the certification is that Abbott is an organic handler, Abbott makes non-organic products too, right? Isn't there a non-organic Similac? Or is the only Similac the organic one? No, there's both. Okay, so it's not that you are an organic handler and therefore you can use this label on anything. It's that this product is certified as organic. The way the act works is producers and handlers receive the certification, but they receive it for a specific purpose. In accordance with their organic plan, we are a certified organic handler for Similac organic. Of course not for other products. And do you agree that it would be useful or do you think it wouldn't be useful for us to get the views of the Department of Agriculture as to how this program works and whether they think that it preempts the lawsuit? What I would say about that, Your Honor, is I don't think it's necessary. I think the statute is extremely clear in the provisions I've cited and in the regulatory sites that I've given. However, we would welcome USDA weighing in on the merits of this case and on whether this case should be in federal court or whether it infringes on the Secretary's right and the certifier's right to say which products get the organic label or don't. And in all of these other cases all around the country, no one's ever asked or the Department of Agriculture has not weighed in? That brief doesn't exist somewhere? I don't believe that the Department of Agriculture has ever weighed in. The only appellate decision on the point, as I'm sure you know, is the Eighth Circuit's decision in Aurora Dairy where all of these claims were found to be preempted. But I don't believe USDA has separately been brought into one of these cases. There's the California Supreme Court decision in Quesada too, right? Right. The California Supreme Court decision in Quesada, that was a decision where a particular grower of herbs was certified organic for one of its farms and grew conventional herbs on other of its farms. And what the California Supreme Court said is the allegation in this case is that you've taken the organic label that could properly be used on your organic herbs and you've just stuck it on the conventional herbs. That claim, that's not preempted. That is a substitution fraud. That's not an authorized use of the certification. Here we are authorized to use the label for this product. The carve-out in Aurora was similar, right? Aurora allowed some claims to survive that would not be preempted, but it was also a misuse of the label rather than an attack on the certification process. So what Aurora said is there are some claims that were asserted that could proceed, some that were preempted. The ones that were preempted were the ones challenging whether the formula could bear the word organic or the USDA organic seal. Anything challenging the certifier's decision was held preempted. But just because the product was organic doesn't mean it could have other misrepresentations unrelated to organic. In that case, one of the allegations was that Aurora Dairy, the producer, had a representation on its label that cows could roam free in its pastures. And the Eighth Circuit said if you allege that to be false and you were injured by it, that claim could proceed, but not a claim that the product is not organic. And it's important to note this about Aurora Dairy. That case arose. It was actually an MDL, and all of those cases in it arose because USDA itself was alleging Aurora Dairy was in violation of the regulations. Aurora Dairy and USDA came to a consent agreement. For example, Aurora Dairy was alleged to be using non-organic cows to produce organic milk or to sell as labeled organic milk, and they came to a consent agreement where they agreed to resolve the use of those practices so Aurora Dairy retired its non-organic cows. So after the consent agreement with USDA, then consumers sued and said, see, they're not complying with the regulations. And the Eighth Circuit said, no, that claim is preempted. That determination was made by an authorized certifier, and the representation on a product that it has been certified as organic and that it has the USDA symbol on that, the USDA organic seal, those are representations by the certifier, and they're indisputably true. And those could not be challenged because they're preempted. This is a good place to end. Thank you. You've gone well over your time. Thank you. I appreciate it, Your Honor. Counsel, you have three minutes for rebuttal. Are any of the synthetic chemicals that you claim are in organic Similac not on the national list? All of the ingredients that we challenge in Abbott's products are not on the national list. Abbott makes the argument that the national list allows all nutrients. Well, first, it has to make a factual showing that this ingredient is a nutrient. Well, our complaint alleges specifically that these ingredients are not nutrients. So this is a dispute about what the list means and . . . Exactly. Exactly. And that goes, again, to the merits. And that's something that the district court did not reach. Correct. Correct. But let's . . . can I give you a hypothetical? Suppose the . . . suppose you do take discovery, and the evidence shapes up to something like this. Abbott told the certifier, these are the things we put into the product, and we put them in because we think they are nutrients within the meaning of the provision of the national list. And the certifier says, yeah, I think that's right. So you're certified. Do you still . . . would you be able to maintain, in your view, a lawsuit saying that because you think the certifier was wrong about that understanding or interpretation of the statute, that Abbott is misrepresenting itself when it puts the USDA organic label on the product? Yes. In that case, let's take an analogy of judicial review of administrative findings. QAI would be making an error of law, erroneously interpreting the law as allowing these ingredients. Is that a consumer fraud actionable under the statutes? Yeah, it is a consumer fraud because they labeled it as organic, and federal law prohibits that product from being labeled as organic. QAI says, they said, go ahead, you can do this. Ascorbic acid, not vitamin C. Ascorbic acid is not in their product. Sorry. Ascorbyl palmitate is. And ascorbyl palmitate is, as we allege, a chemical preservative. But bottom line . . . But doesn't that conflict with a statute that says the way to deal with this is if you think the certifier made a mistake, you go to the department and say, hey, the certifier made a mistake. And then if the department says, no, we agree with the interpretation, then you get your judicial review of the administrative action. You don't get the judicial review of the administrative action by suing under state law and saying that the company is misrepresenting that it is organic even though it was certified as such by the Department of Agriculture's agent. I wish that were an option. The statute does not give consumers the ability to appeal a determination that a product is certified. There is no such procedure whatsoever. And also keep in mind that the USDA did not approve this product. The USDA did not certify this product. It was a private party that Abbott hired. Because that's the way Congress set this thing up. Right. They instructed the Department of Agriculture not to hire their own inspectors but to certify certifiers and operate the plan through them. Absolutely. And also Congress set this up so that products that have banned synthetic ingredients would not be labeled as organic. Now, do we have a situation here where Abbott told its certifier that we're having these 10 ingredients in it and QAI certified that but then Abbott added five more ingredients? We think that is the case here. Somebody somewhere made a mistake. I don't know if it's the certifier. I don't know if it's Abbott. If it is the certifier, the right course is to allow Abbott to implead them under Rule 14. Based on mistake by the certifier, you run right into the preemption because that's not for state law to second guess. Finality of certification was never a stated purpose of the statute. What is a stated purpose of the statute is consumer protection. And the statute does not give consumers Information by uniform labeling. The label means something that a consumer can rely on. 7 U.S.C. 6501, consumer protection is listed as a purpose of the statute. Finality of certification was not. So your allegation, if I understand you, or a possible allegation, is that after certification, Abbott added ingredients that they didn't inform the certifier about? We have evidence to that effect. We also argued this to the district court, that Abbott described some ingredients generically and did not tell QAI the precise ingredients being used. So that's a serious charge. That is a serious charge. So the district court misunderstood your complaint when it said that you do not allege substitution, that you do not allege that there was a fraud on the inspectors? Did you allege that in your complaint? We did not allege anything about certifiers or inspectors. Did you allege any fraud on the certifiers? No, we did not. Did you allege that Abbott told the certifiers one thing was in the product and then substituted something else instead? That is what we asked the district court for leave to amend. Did you allege that in your complaint? No, we did not. We asked leave to amend it because we could allege it. We knew those facts to be true. And the district court didn't allow you an amendment? Correct. Because she believes the statute under which you are suing is preempted? Correct. I didn't reach any other issue. So you're telling us here that you can allege a different and more forceful cause of action against Abbott specifically? Yes. You have a factual basis for it? You're not going to just make conclusory allegations that they deceived the inspector? You can say with regard to this ingredient and this ingredient, they put something in, they substituted this for that? Yes. You can say that in a complaint? Yes, we can. Because you know fraud has to be pleaded with particularity. We have that evidence. And you're not just saying that they said in general we have nutrients? We know for a fact that the ingredients used were not disclosed to QAI. I don't know if Abbott decided to ---- Wait a minute. They're on the label. They're disclosed to your clients. They're right there. They were not disclosed to QAI before the certification. So QAI certified it without knowing these ingredients. I don't know if QAI was ever informed, but we can allege facts that the ingredients being used were withheld from QAI. That is, yes, what we can allege and what we have to allege. And just out of curiosity, since what was told to the inspectors you've told us repeatedly is not available to the public, even by a Freedom of Information Act request, you have a whistleblower or something. Is that the thing? No. Well, so what kind of basis would you share with us? We have had limited discovery before the motion to dismiss was ruled on. So what you're suggesting is if we find that the district court was right on preemption, we still ought to reverse for abuse of discretion and not allowing an amended complaint? Is that where it comes to? I'm sorry. Could you repeat the question? Yes. I'm saying if we find that the district court was right on preemption as you have currently written your complaint, then the issue before us would become, did the district court abuse its discretion in not granting you leave to amend to state a different claim that you now say you have, the district court found you didn't have in your original complaint? Yes, because the district court's determination of preemption was based on its assumption that we conceded certification, that this product that was actually sold was approved by QAI. Well, wait, wait, wait, wait, wait, wait, wait. One thing I suppose we might find out from the Department of Agriculture or we might find out by reading those regulations is that QAI was supposed to, in issuing a certification, look at what the ingredients were. So that's a different, if what you're saying, I don't know what you mean by conceding certification. What are you conceding or not conceding? It's the language that the district court used. The district court thought that there was no dispute here. The district court noted in the hearing after issuing its decision, at the hearing on our attempt to amend the complaint, she said that, yes, I see now that there is a dispute as to what was certified, but the court still . . . So you made it clear to the district court . . . We tried. I'm not sure you're making it clear to me. I want to understand, are you alleging fraudulent . . . Is what you're going to amend your complaint to say is fraudulent certification? That is, if the product was certified, it is because Abbott misled the inspectors as to what was in the product. Is that what you're going to amend to say? I don't know if Abbott . . . Here, let me rephrase this. Let me make sure to say that correctly. Somebody made a mistake. It could be QAI and Abbott, or it could just be Abbott. Is it a mistake or a fraud? On Abbott, I believe we have fraud, and QAI, I don't know yet. When you say you made this clear to the district court, is there a proposed amended complaint that was submitted to the district court? We submitted a proposed amended complaint, and also at the hearing, we . . . in assessing whether you should be allowed to amend your complaint, are you now saying you have another amended amended complaint up your sleeve that you're telling us about that we should not limit ourselves to looking at the proposed amended complaint that was submitted to the district court? Correct, yes. At the hearing, we told the district judge that we did have evidence that QAI didn't know all of the ingredients. The proposed amended complaint that we gave to the judge included evidence that QAI told its suppliers, told its clients like Abbott, that the ingredients being used, taurine, were not allowed . . . I don't understand. You are asking us, if we were to agree with the district court that the current complaint is preempted, you are asking us to rule that the district court erred in not giving you leave to amend the complaint. What I am asking you is, is that error that the district court did not allow you to file the amended complaint that was submitted, or are you also saying there is some other version of an amended complaint that it was error for the district court not to allow, and where in the record will we look to see what that might look like someday? I understand. Yes, it's the latter. We asked the court for leave to make those allegations. If you give me a moment, I can point you to the record. Okay. It will be somewhere in the colloquy on the motion to reconsider? Yes, it was there. If you look at our brief, pages 10-11, as well as our brief at page 6, note 2, pages 12-13, and our reply brief, page 11, 9-14, and 20. Okay. If we look at those places, we will find references to the record that will allow us to determine what the amended complaint that you would like leave to file might say. Yes. That's good. Thank you. I beg your pardon. May I have thirty seconds or less? We don't ordinarily do it, but thirty seconds I can live with. Thank you, Your Honor. The points I wanted to make are two. First, the plaintiffs had three complaints they put before the district court, original, amended, and second amended. The district court found them all preempted. The other point is, with respect to the allegations that Ms. Golan is now describing, the district court found those could not be stated consistent with Rule 11. That was her finding. You will see it in the transcript on the argument on the motion for leave to amend. Thank you for the extra time. Thank you both for a very lively argument.